**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LONGO AND ASSOCIATES, LTD. AND JOSEPH ANTHONY LONGO, | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) ) | No. 24 C 3868 No. 18 B 24763 |
| | ) | Judge Sara L. Ellis |
| ALEX D. MOGLIA, as trustee in bankruptcy for Rosebud Farm, Inc. and ROBERT SMITH, | ) ) ) ) | |
| Appellees. | ) | |

**<u>OPINION AND ORDER</u>**

This appeal arises out of Debtor Rosebud Farms, Inc.'s Chapter 7 bankruptcy petition.

Creditor-Appellant Joseph Anthony Longo and his law firm Longo and Associates, Ltd.

("Longo") successfully represented Creditor-Appellee Robert Smith in a pre-petition

employment discrimination suit against Debtor Rosebud Farms, Inc. (the "Debtor"). After the

district court entered final judgment for Smith and awarded him attorneys' fees, the Debtor filed

the underlying bankruptcy petition. Longo submitted two claims against the Debtor's assets,

seeking a 45% contingent fee and the court-awarded attorneys' fees pursuant to his and Smith's

attorney-client agreement and assignment agreement, respectively. The bankruptcy court

allowed one of his claims as only a general unsecured claim in the amount of $749,472.71 for

Longo's attorneys' fees and disallowed his other claim. Longo filed the instant appeal. Because

the bankruptcy court did not err in its holdings or abuse its discretion, the Court affirms the

bankruptcy court's April 30, 2024 order and memorandum decision (the "Order").

**BACKGROUND**[1]

While a Chapter 7 bankruptcy should be the quickest and simplest form of bankruptcy, the underlying case has been pending for six years and involves thousands of pages filed on the docket. The Debtor operated a local grocery store and employed Smith to work behind the meat counter. Smith filed a lawsuit against Rosebud, in which he claimed that the Debtor subjected him to sexual harassment in violation of Title VII, racial discrimination in violation of 42 U.S.C. § 1981, retaliation in violation of Title VII and § 1981, and gender violence in violation of the Illinois Gender Violence Act. *See Smith v. Rosebud Farmstand*, No. 11 C 9147 (N.D. Ill. filed December 23, 2011). Longo represented Smith in this case. A jury found in favor of Smith on all the foregoing claims, *Smith v. Rosebud Farmstand*, No. 11 C 9147, 2016 WL 5912886 (N.D. Ill. Oct. 11, 2016), *aff'd sub nom. Smith v. Rosebud Farm, Inc.*, 898 F.3d 747 (7th Cir. 2018), and the district court entered final judgment against the Debtor and in favor of Smith on July 24, 2017, effective retroactively from July 14, 2017, in the amount of $559,656.57 (the "Judgment"). *Smith v. Rosebud Farmstand*, No. 11 C 9147, Doc. 339 (N.D. Ill. July 24, 2017). Smith subsequently recorded the Judgment with the Cook County Recorder of Deeds, which placed a judgment lien on the Debtor's real estate in Cook County.

However, the Judgment did not include attorneys' fees. Smith filed a separate fee petition, and on August 23, 2018, the district court awarded Smith attorneys' fees in the amount of $611,388.50 and costs in the amount of $3,868.71—totaling $615,257.21—to be paid by the Debtor (the "Attorneys' Fee Award"). Importantly, Smith and Longo had previously entered into an attorney-client agreement, in which Smith agreed to pay Longo 45% of any recovery once a trial date was set and assign to Longo all claims for attorneys' fees. As the assignee,

---

[1] In its Order, the bankruptcy court detailed this litigation's long and complicated history. *See In re Rosebud Farm, Inc.*, 660 B.R. 222, 237–47 (Bankr. N.D. Ill. 2024). To avoid unnecessary repetition, the Court includes only the facts relevant to this appeal.

Longo did not submit any evidence to the bankruptcy court indicating that he recorded the Attorneys' Fee Award.

Shortly after the district court entered the Attorneys' Fee Award and the Seventh Circuit affirmed the Judgment on appeal, the Debtor filed the underlying Chapter 7 bankruptcy petition. Longo filed Claim No. 4-1, asserting a secured claim against the Debtor's real estate for attorneys' fees and costs in the amount of $1,780,258.71.[2] Smith filed Claim 5, asserting a secured claim against the Debtor's real estate for the Judgment and interest in the amount of $590,131.02. Trustee-appellee Alex D. Moglia, in his capacity as the Chapter 7 trustee (the "Trustee"), filed an objection to Claim No. 4-1, reasoning that Longo had failed to establish the secured status of the claim or his entitlement to an amount greater than $615,257.21. The Trustee also objected to Claim No. 5 for multiple reasons.

On January 29, 2020, at a hearing on the Trustee's objection to Claim No. 4-1 and after the matter was fully briefed, Longo orally sought leave to conduct additional discovery. The bankruptcy court stated that it would permit discovery only if it first determined that Longo had filed a claim that complied with the Bankruptcy Code and Bankruptcy Rules. Accordingly, the bankruptcy court did not allow discovery at that time. Instead, on August 25, 2020, the bankruptcy court entered an order (1) sustaining in part the Trustee's objection to Claim No. 4-1 and allowing the claim as a general unsecured claim in the amount of $615,257.21, and (2) denying Longo's request for discovery. After Longo appealed this order, the district court affirmed the bankruptcy court's order in part and remanded in part, asking the bankruptcy court to clarify its order.

---

[2] The bankruptcy court noted that Claim No. 4-1 exceeds both the amount Smith had sought from the district court and what the district court awarded. Order at 239.

On remand, the bankruptcy court set a new bar date for Longo to file an amended claim that superseded his original claim. On December 8, 2022, in compliance with the new bar date, Longo filed Amended Claim No. 4, asserting a reduced secured claim against the Debtor's real estate for attorneys' fees and costs in the amount of $1,160,539.83. Amended Claim No. 4 consisted of four separate amounts: (1) the $615,257.21 Attorneys' Fee Award, (2) $223,862.62 as 45% of the Judgment per the attorney-client agreement with Smith, (3) interest, and (4) post-judgment attorneys' fees totaling $321,420.00. On December 9, 2022, Longo also filed Claim No. 7, as "Robert Smith by agent Longo," asserting a secured claim against the Debtor's real estate in the amount of $936,677.21. Filed as an alternative argument if the bankruptcy court did not find that Longo secured Amended Claim No. 4, Claim No. 7 consists of both the $615,257.21 Attorneys' Fee Award and the $321,420.00 post-judgment attorneys' fees.

On January 17, 2023, Smith objected to Claim No. 7, arguing that Longo did not have his authorization to file the claim on his behalf. The Trustee also objected to Claim No. 7, as well as Amended Claim No. 4. After considering all filings and exhibits on its docket, the bankruptcy court issued an over sixty-page memorandum decision and entered the Order sustaining the objections in part and overruling the objections in part. Specifically, the bankruptcy court allowed Longo's Amended Claim No. 4 only as a general unsecured claim in the amount of $749,472.71, which is the Attorneys' Fee Award plus interest, to be paid in accordance with 11 U.S.C. § 726(a)(1) and disallowed Longo/Smith's Claim No. 7. The bankruptcy court also allowed Claim No. 5 as a secured claim, bifurcating the distribution of the Judgment amounts between actual and punitive damages. Longo timely appealed the bankruptcy court's Order under 28 U.S.C. § 158(c)(2) and Bankruptcy Rule 8002(a).

**LEGAL STANDARD**

Under 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of a bankruptcy court. The Court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014). A bankruptcy court's discovery decisions "are reviewed for an abuse of discretion." *USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 27 F.4th 499, 513–14 (7th Cir. 2022).

**ANALYSIS**

Longo raises seven issues on appeal,[3] which the Court organizes under three broad questions: (1) whether the bankruptcy court erred by allowing Amended Claim No. 4 as a general unsecured claim in the amount of $749,472.21, (2) whether the bankruptcy court erred by disallowing Claim No. 7, and (3) whether the bankruptcy court abused its discretion by rejecting Longo's requests for additional discovery.[4]

**I.     Amended Claim No. 4**

Longo argues the bankruptcy court erred by holding that Amended Claim No. 4 is unsecured in the amount of $749,472.21 for multiple reasons.

---

[3] Throughout his brief, Longo repeatedly asserts that the bankruptcy court unconstitutionally left its neutral role and advocated for the Trustee and Smith in its Order with arguments, cases, and statutes. *See, e.g.*, Doc. 24 at 20–22. However, Longo does not include this assertion in his statement of issues, Doc. 24 at 9–10, and offers no specific support for the assertion. Instead, he only mentions this argument at various places to support his seven primary issues. Accordingly, the Court does not independently analyze this argument.

[4] The Court notes that every party violated the Court's standing order regarding page limits for bankruptcy appeals. In the interest of resolving this prolonged case on the merits, the Court will consider each party's brief in full. However, the Court expects the parties to comply with the Court's standing orders in the future.

**A.      Issue #1: Whether the bankruptcy court erred in its holding because Smith did not object to Amended Claim No. 4, and it denied Longo's attempts to allow Smith to amend his Claim No. 5.**

First, Longo states that the bankruptcy court erred in its holding because Smith—the only other secured creditor—did not object to Amended Claim No. 4. Both Smith and the Trustee respond that Smith's failure to file a written objection to Amended Claim No. 4 is irrelevant. Smith adds that the Court should not interpret his silence as supportive of Amended Claim No. 4 because he "had full confidence that the Trustee and his attorney would properly and effectively pursue and file an objection to [Amended] Claim No. 4 and felt that duplicative objections would be 'pointless and unnecessary.'" Doc. 27 at 18.[5] The Court agrees that Smith did not need to object to Amended Claim No. 4. *See* Fed. R. Bankr. P. 3007 advisory committee's note (1983) ("While the debtor's other creditors *may* make objections to the allowance of a claim, the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee." (emphasis added)).

Under the same issue heading, Longo also asserts that the bankruptcy court erred by denying his motion to allow Smith to amend his Claim No. 5—which arises out of the Judgment in Smith's employment discrimination case—to include Longo's Attorneys' Fee Award plus interest. In direct support, he only cites *Matter of Stoecker*, 5 F.3d 1022 (7th Cir. 1993), to contend that "leave to amend should be liberally granted." Doc. 24 at 24. However, in *Matter of Stoecker*, the Seventh Circuit held that a bankruptcy court should have allowed a creditor to amend his *incomplete* proof of claim to add necessary documentation to comply with Bankruptcy Rule 3001, not amend a complete proof of claim to fold in separate attorneys' fees. *Id.* at 1028.

---

[5] The parties' briefs include page numbers on the bottom of the pages that differ from the ECF-generated page numbers. All citations to page numbers for these documents refer to the ECF-generated page numbers.

And Longo's other proffered support complains of the Trustee's actions, rather than developing his argument for why the *bankruptcy court* erred.[6]

As Smith states, "Longo believes, or at least argues, that if Smith had amended his claim to include Longo's additional [attorney's] fees, all of his fees would somehow become secured." Doc. 26 at 16.[7] But both the bankruptcy court and the district court on appeal determined that Smith's Judgment did not create a secured lien for Longo's Attorneys' Fee Award. Further, Smith assigned all claims for the Attorneys' Fee Award to Longo in two separate documents: their attorney-client agreement and a separate assignment of claim for attorneys' fees, which Longo attached to his Claim No. 4-9 as Exhibit A. Pursuant to these valid documents, Longo is the proper creditor to assert a claim for the Attorneys' Fee Award. *See, e.g., In re Breakwater Co.*, 232 F. 375, 375 (E.D. Pa. 1916) ("Assignees of claims have the right, under the provisions of the bankruptcy law, to prove them against the estate just as other claims may be proven."). And under Bankruptcy Rule 3001, only Longo—not Smith—may file a proof of claim. *See* Fed. R. Bankr. P. 3001(e)(1) ("Unless the transfer was made for security, if a claim was transferred before a proof of claim is filed, only the transferee or an indenture trustee may file a proof of claim."). Therefore, the bankruptcy court correctly disallowed any attempt by Longo to amend Smith's Claim No. 5 to include Longo's Attorneys' Fee Award.

---

[6] Longo claims the Trustee "violated [his] fiduciary duties and the purpose/policy of the bankruptcy code requiring efficient distribution to creditors" and suggests the Trustee only objected to Amended Claim No. 4 to earn additional fees. Doc. 24 at 23–26. The Trustee calls this allegation reckless and states that he objected to the claim to "prevent Longo from receiving more than he was entitled to." Doc. 26 at 15–16. The Trustee notes that though the bankruptcy case has been pending for approximately six years, neither the Trustee nor his counsel have sought payment, nor have they received compensation in the last three and a half years.

[7] Smith refused to amend his Claim No. 5, regardless of Longo's desire. *See* Doc. 27 at 22.

> **B.** **Issues #2 and 4: Whether the recorded judgment lien secures the amounts owed to Longo through the attorney-client agreement and creates a secured lien against the Debtor's real estate.**

Longo argues that the Judgment, which Smith recorded to provide himself with a secured claim against the Debtor's real estate, similarly secures and creates a lien against the Debtor's real estate for both the 45% contingent fee and Attorneys' Fee Award owed to Longo through Smith and Longo's attorney-client agreement. He also claims the Trustee admitted this assertion. The Trustee rebuffs Longo's position, maintaining that Longo confuses Smith's secured claim against the Debtor and Longo's unsecured claim against Smith.

First, as the bankruptcy court and district court previously held, the recorded Judgment does not secure Longo's Attorneys' Fee Award. *See Longo v. Rosebud Farm, Inc.*, 638 B.R. 600, 603 (N.D. Ill. 2022) (explaining that the Judgment did not create a lien for attorney's fees because "no lien for attorney's fees in Longo's favor could exist until the amount of attorney's fees was determined and memorialized"). Longo's attempt to raise this issue once again is in vain. Also, no dispute exists that Smith obtained a secured judgment lien on the Debtor's real estate when he recorded the Judgment. So, the Court focuses its analysis on whether the Judgment lien grants Longo a secured claim against the Debtor's real estate for the 45% contingent fee owed to him under the attorney-client agreement.

Longo argues that because Smith signed the attorney-client agreement, promising to pay Longo 45% of any recovery, Longo effectively holds a secured lien against the Debtor's real estate for 45% of the recorded Judgment. But the bankruptcy court concluded that the attorney-client agreement created a lien on Smith's recoveries, not a claim against the Debtor's real estate, and therefore the recorded judgment only provides Smith with a secured claim. *See In re Rosebud*, 660 B.R. at 273–74. This Court agrees.

In Smith's employment discrimination case, the district court entered final judgment against the Debtor and in favor of Smith in the amount of $559,656.57. Smith then recorded the Judgment with the Cook County Recorder of Deeds, placing a judgment lien on the Debtor's real estate. Before bringing suit, Smith and Longo executed an attorney-client agreement, in which Smith agreed "to pay my attorney . . . 45% of any recovery once a trial date is set." Doc. 30 at 58–59. This language clearly entitles Longo to seek payment from Smith but does not legally assign any of Smith's recovery to Longo. The last page of the parties' attorney-client agreement, in which Smith assigned to Longo all claims for attorneys' fees but does not mention the contingent fee, makes this clear. *Id.* at 64.

Highlighting this difference, Illinois courts, in considering claims to equitable liens based on contingent fee agreements, have drawn a distinction between an actual assignment of a portion of a recovery fund and a mere personal promise by the client to pay his attorney fees in an amount equal to a specified portion of the fund to be recovered or out of the proceeds of such a fund. *Lewis v. Braun*, 356 Ill. 467, 478–79 (1934); *Cameron v. Boeger*, 200 Ill. 84 (1902); *Dep't of Pub. Works v. Exch. Nat'l Bank*, 93 Ill. App. 3d 390, 394 (1981). And the Illinois Supreme Court has found no equitable assignment in a contract that provided that the attorney would receive as compensation for his services "one-third of whatever is realized or obtained" from the contemplated litigation. *Cameron*, 200 Ill. at 91–92. The court emphasized that this language amounted to a mere promise by the client to pay the attorney compensation, "the amount of which was to be determined by what was recovered." *Id.* at 91. Comparatively, the Seventh Circuit determined that the language "[t]he terms of that contingent-fee arrangement *entitle us* to one-third (1/3) of any and all recoveries made on the claims by virtue of trial, settlement, or other disposition of the proposed litigation" suggests assignment of a claim rather

9

than a personal covenant to pay. *McKee-Berger-Mansueto, Inc. v. Bd. of Educ.*, 691 F.2d 828, 836–37 (7th Cir. 1982) (emphasis added).

Consequently, while the attorney-client agreement contractually obligates Smith to pay Longo 45% of his recovery, the agreement does not assign or in any way create a secured lien for Longo against the Debtor's real estate. Further, the cases that Longo cites to support his position that he holds a lien against the Debtor's real estate involved attorneys that represented the debtor, not a creditor, *see In re Del Grosso*, 111 B.R. 178 (Bankr. N.D. Ill. 1990); *In re Albert*, 206 B.R. 636 (Bankr. D. Mass. 1997); *Matter of Pac. Far E. Line, Inc.*, 654 F.2d 664 (9th Cir. 1981); *In re Reinhardt*, 81 B.R. 565 (Bankr. D.N.D. 1987); *In re Kleer-Span Truss Co., Inc.*, 76 B.R. 30 (Bankr. N.D.N.Y. 1985), or did not involve bankruptcy proceedings, *see Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb*, 298 F.2d 371 (10th Cir. 1962); *Caruso v. Pelling*, 271 Ill. App. 318 (1933).

Longo is correct that the recorded Judgment secures the full amount awarded by the district court to Smith, including Longo's 45%. And Smith does not dispute that he owes Longo 45% of the recovery that he receives from the Debtor. But ultimately Smith, not Longo, holds the secured lien that entitles him to payment from the Debtor.[8]

### C.      Issue #3: Whether Longo produced evidence of service sufficient to satisfy the requirements of the Attorney's Lien Act and secure his Amended Claim No. 4.

The Attorney's Lien Act allows attorneys to assert liens on their clients' potential recoveries for the amount of any agreed fee. 770 Ill. Comp. Stat. 5/1. To enforce such a lien, the

---

[8] In his response and sur-reply briefs, Smith argues that this Court should refer any payment dispute between Longo and Smith to the bankruptcy court to enter proposed findings of fact and conclusions of law. However, Longo did not raise any issue in his appeal that questioned the bankruptcy court's authority to determine how the Trustee should make distributions between Longo and Smith, focusing his arguments instead on why he possesses a secured claim. And Smith did not file a cross-appeal raising the issue. Therefore, this issue is not appropriately before the Court and the Court declines to comment.

statute requires the attorney to first perfect it by serving written notice, by registered or certified mail, on the party against whom his client asserts the underlying claim. *Id.* The written notice must explicitly claim the lien and describe the interest the attorney has in the suit. *Id.*

Longo argues that although he lost the certified mail receipt, he "swore to serving [the Debtor] by certified mail—under penalties of perjury—and included multiple uncontroverted affidavits/declarations" as evidence, therefore satisfying the requirements of the Illinois Attorney's Lien Act and securing his claim for 45% of the recovery against the Debtor's real estate. Doc. 24 at 32. But the Court need not decide whether Longo sufficiently complied with the Attorney's Lien Act's strict obligations because even if he did, he still would not have a secured claim against the Debtor's real estate, because the lien would have attached to Smith's recovery and not the Debtor's assets. *See* 770 Ill. Comp. Stat. 5/1 ("Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered"); *see also Johnson v. Cherry*, 422 F.3d 540, 544 (7th Cir. 2005) (Illinois attorney's lien "attaches only to the proceeds that the client might recover in pursuit of a claim for which the attorney was engaged to represent the client."). Therefore, regardless of whether Longo satisfied the statute's requirements, the Illinois Attorney's Lien Act does not provide a mechanism for Longo to secure his contingent fee against the Debtor's real estate.

### D.      Issue #7.1: Whether the Trustee failed to meet its burden when objecting to Amended Claim No. 4.

Section 501(a) of the Bankruptcy Code provides that a creditor having a claim may file a proof of claim in a debtor's case. A proof of claim, according to Rule 3001(a) of the Federal Rules of Bankruptcy Procedure, is simply "a written statement setting forth a creditor's claim," conforming substantially to the appropriate Official Form, currently Form 10. Under § 502(a) of the Bankruptcy Code, a proof of claim filed pursuant to § 501 is deemed allowed unless a party

11

in interest objects. A party objecting to such a claim has the initial burden of presenting some evidence to refute the claim. *In re O'Malley*, 252 B.R. 451, 456 (Bankr. N.D. Ill. 1999). "Once the objector has produced some basis for calling into question [the] allowability of the claim, the burden then shifts back to the claimant to produce evidence to meet the objection and establish that the claim in fact is allowable." *Id.*

Longo argues that the Trustee failed to meet his burden when objecting to Amended Claim No. 4. Specifically, he claims that the Trustee was required "to prove facts establishing that [Longo] did not have [a] secured claim[] against [the Debtor] ***and*** 'substantial evidence.'" Doc. 24 at 71 (emphasis in original). But Longo mistakes the Trustee's burden, which is not nearly so high. An objector need only produce "some evidence [or] legal point to overcome [the claim's] rebuttable presumption," *In re Orseno*, 390 B.R. 350, 353–54 (Bankr. N.D. Ill. 2008) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992)), "equal in probative force" to that presented in proof of claim, *In re Carlson*, 126 F.3d 915, 921–22 (7th Cir. 1997) (citation omitted). Importantly, "the ultimate burden of persuasion always remains with the claimant to prove entitlement to the claim." *In re McCoy*, 355 B.R. 69, 72 (Bankr. N.D. Ill. 2006).

The Trustee objected to Amended Claim No. 4 on the ground that Longo's claimed amount exceeded the district court's Attorneys' Fee Award and was not secured under any theory advanced by Longo. *See In re Rosebud Farms, Inc.*, No. 18 B 24763, Doc. 253. Contrary to Longo's present assertion, the Trustee presented sound legal arguments over seven pages in Section III of his filing to support both his arguments. *See id.* at 8–14. Therefore, the Trustee satisfied his burden of presenting some legal point to overcome the claim's rebuttable presumption when objecting to Longo's Amended Claim No. 4.

12

For the foregoing reasons, the Court finds no error in the bankruptcy court's determinations regarding Amended Claim No. 4. Thus, the Court affirms the bankruptcy court's holding that Amended Claim No. 4 is unsecure in the amount of $749,472.21.

## II.    Claim No. 7

Longo also argues that the bankruptcy court erred by disallowing Claim No. 7 because he argues that (1) Longo was authorized to file the claim on Smith's behalf, and (2) the Trustee and Smith failed to meet their objection burden.

### A.    Issue #6: Whether Smith authorized Longo to file Claim No. 7 on his behalf because Smith assigned all fee claims to Longo.

Bankruptcy Rule 3001 allows only a creditor or the creditor's agent to sign a proof of claim. Fed. R. Bankr. P. 3001. Rules 3004 and 3005 provide the only exceptions to Rule 3001's signature requirement. If a creditor fails to file a proof of claim within the proper timeframe, Rule 3004 allows the debtor or trustee to file a proof of claim, Fed. R. Bankr. P. 3004, and Rule 3005 allows any entity that, along with the debtor, is or may be liable to the creditor or has given security for the creditor's debts to file a proof of claim, Fed. R. Bankr. P. 3005.

On appeal, Longo does not claim to be Smith's agent, the debtor, the trustee, or co-liable to a creditor, and therefore had no authorization to file a proof of claim of Smith's behalf under any Bankruptcy Rule.[9] Curiously, Longo argues that the bankruptcy court should have allowed Claim No. 7 because Smith authorized him to file it as Smith's *assignee*. While true that Smith validly assigned Longo the right to the Attorneys' Fee Award, the effect is that Longo may file a claim as Smith's assignee for only the amount of the Attorneys' Fee Award. *See* Fed. R. Bankr. P. 3001(e)(1) ("Unless the transfer was made for security, if a claim was transferred before a

---

[9] Longo presumably does not make these arguments because they are unsound. Longo formally withdrew as Smith's attorney in 2018, terminating his ability to act as Smith's agent, and he undoubtedly is not the debtor, trustee, or co-liable to any creditor. Further negating any argument under Rules 3004 and 3005, Smith filed his proof of claim within the proper timeframe.

proof of claim is filed, only the transferee or an indenture trustee may file a proof of claim.").  In

fact, this is exactly what Longo did through his Amended Claim No. 4.  Accordingly, Smith's

assignment did not authorize Longo to file Claim No. 7.

> **B.      Issue #7.2: Whether the Trustee and Smith failed to meet their burden when objecting to Claim No. 7.**

Longo argues that the Trustee and Smith failed to meet their burden when they separately

objected to Claim No. 7.  However, if Longo invalidly submitted the claim, the bankruptcy court

need not treat the claim as *prima facie* evidence of a valid claim and reach the question of

whether objectors carried their burden.  *See In re Plourde*, 418 B.R. 495, 508–09 (B.A.P. 1st Cir.

2009) (stating that when a claimant does not file a proof of claim in accordance with the

bankruptcy rules, the claim is not entitled to *prima facie* allowance).  Here, as discussed in

Section II.A, Longo's Claim No. 7 did not comport with the bankruptcy rules.  Consequently, the

bankruptcy court properly disallowed Claim No. 7 and did not reach the question of whether the

Trustee and Smith met their objection burden.

In sum, the Court finds no error in the bankruptcy court's determinations regarding Claim

No. 7.

## III.    Discovery

> **A.      Issue #5: Whether the bankruptcy court properly denied Longo's request for additional discovery.**

Longo challenges the bankruptcy court's decision to deny him discovery.  "Courts have

broad discretion in matters that relate to discovery."  *In re Mosher*, No. 06 B 71261, 2009 WL

412692, at *2 (Bankr. N.D. Ill. Feb. 11, 2009) (citing *Patterson v. Avery Dennison Corp.*, 281

F.3d 676, 681 (7th Cir. 2002)).  "Because discovery orders are reviewed for abuse of discretion,

reversal is relatively rare."  *In re S.N.A. Nut Co.*, No. 95 C 3999, 1996 WL 31155, at *4 (N.D. Ill.

Jan. 24, 1996). Reversal is not appropriate "absent a clear showing that the denial of discovery resulted in actual and substantial prejudice to the complaining litigant." *In re Peachtree Lane Assocs., Ltd.*, 206 B.R. 913, 926 (N.D. Ill. 1997), *aff'd sub nom. Matter of Peachtree Lane Assocs., Ltd.*, 150 F.3d 788 (7th Cir. 1998).

Longo argues that the bankruptcy court represented that it would permit discovery to resolve any factual issues but later denied discovery and evidentiary hearings, even though the bankruptcy court "found factual issues" regarding the evidence Longo submitted to support his alleged attorney's lien on Smith's judgment. *See* Doc. 24 at 46–49. He states that the bankruptcy court "unfairly/discriminatorily" broke its promise and ruled against allowing discovery. *Id.* at 61.

Longo has failed to show an abuse of discretion here. Longo initially sought discovery to find evidence to support his Illinois Attorney's Lien Act assertion. *See* Doc. 24 at 55 (Longo "had hoped to resolve the issues with [the T]rustee that the attorney's lien and other documents were served directly to [the Debtor] in 12/11"). But Longo cannot file a claim without the necessary proof and then seek discovery to find such supporting documents, especially when he merely speculates that the Debtor has proof of service of his attorney's lien. *See Emerson v. Dart*, 109 F.4th 936, 943 (7th Cir. 2024) (holding the district court did not abuse its discretion when denying plaintiff's request to conduct discovery because the complaint did not sufficiently state a claim for relief and any discovery request "was based on nothing more than mere speculation and would amount to a fishing expedition" (quoting *Helping Hand Caregivers, Ltd. v. Darden Rests., Inc.*, 900 F.3d 884, 890 (7th Cir. 2018)). Further, as discussed above, Longo's attorney's lien claim fails because any such lien would be on Smith's recovery, not the Debtor's assets, meaning that he cannot show that the denial of discovery prejudiced him in any way.

15

Therefore, the bankruptcy court did not abuse its discretion when denying Longo's

discovery request.

## CONCLUSION

For the foregoing reasons, the Court affirms the bankruptcy court's April 30, 2024 Order.


Dated: March 18, 2025

_____

SARA L. ELLIS
United States District Judge